MURDOCK, Justice
(concurring in part as to the rationale and concurring in the result).
I concur in the result achieved by the main opinion and, save for two aspects, agree with the analysis by which it reasons *1006 to that result.[6] The primary holding of the main opinion, as I read it, is that the fact that the expert in this case is employed by an entity that receives public funds does not remove that expert from the ambit of the directive regarding payment of expert-witness fees in § 22-52-14, Ala.Code 1975. On this issue, the main opinion and the special writing of Justice Bolin appear to be in accord. Before explaining the two aspects in which I decline to join the main opinion, I first offer two preliminary observations.
First, I believe the primary conclusion reached in both the main opinion and in Justice Bolin’s special writing is supported by the Act of the Alabama Legislature by which the statute in question, § 22-52-14, was most recently amended, Act No. 84-833, Ala. Acts 1984. The title of that Act makes clear the intent of the legislature that experts employed to provide expert testimony in commitment hearings are to be paid a reasonable fee, notwithstanding the fact that they are supplied and employed by a facility that receives State funds. That title states that the Act has as its purpose “[t]o amend 1975 Code of Alabama, Sections 22-52-14 and 22-52-17, which relate to mental health evaluations and commitments, so as to require all probate judges to utilize mental health facilities of the State of Alabama when available.” Section 1 of the same Act that in Section 2 adopts the current language of § 22-52-14 at issue in this case clearly contemplates that mental-health facilities supported by public funds will be used “to perform mental evaluations of persons sought to be committed for use in final commitment hearings.” Act No. 84-833, § 1, amending Ala.Code 1975, § 22-51-17.
Second, I read the main opinion as interpreting — and correctly so in my opinion— § 22-52-14 to require the payment of expert witnesses employed in a commitment hearing but, in accordance with the language of the statute, only to the extent such fees are “reasonable.” Accordingly, I am not sure how much, if any, space actually exists between the position expressed in the main opinion and that expressed in Justice Bolin’s special writing (with much of which I also agree).
Insofar as the foregoing bears on the issue of the standard of review, however, I do agree with the axiomatic position taken by the main opinion that the question of the meaning of the statute (as either requiring a reasonable fee or not) is a question of law to be decided by this Court de novo. I also agree with Justice Bolin, however, and I do not read the main opinion as saying otherwise, that our review of the amount of fee to be awarded an expert is not de novo, but instead is based on an excess-of-discretion standard.
Having expressed these preliminary concerns, I turn now to the two aspects of the main opinion that I decline to join. First, I decline to join in the following statement in the Conclusion section of the opinion and the footnote (footnote 5) that accompanies it: “If the probate court desires fact testimony regarding the services rendered by [AltaPointe Health Systems, Inc. (‘AHS’),] to those committed to its care and the response of such persons to that care, the court may order the appearance of ‘non-expert’ employees who do not provide an opinion and for whom no fee is required.”[7] 141 So.3d at 1003-04. I find *1007 this sentence and the footnote that accompanies it unnecessary to the result achieved. More than that, I am uncertain and concerned as to their import on a practical level.
The quoted sentence from the text speaks of the ability of the court to order, without payment, the appearance and testimony of what it labels “ ‘non-expert’ employees.” It speaks of these “non-experts” as giving “fact testimony.” It contemplates that these “fact” witnesses will provide their testimony in a commitment hearing conducted by a judge, without formal medical training, for the purpose of receiving medical evidence and formulating an opinion on a patient’s condition, the patient’s ability to function safely with or without certain treatments, and, ultimately, the need for institutionalization. The sentence contemplates that the value of ordering testimony from such a witness will derive from the fact that the patient is “committed to its care” and that the witness will be able to testify competently as to that care and “the response of such [patient] to that care.” As a general rule, the only person qualified or competent to testify as to the “facts” of a patient’s condition and the patient’s clinical response to treatments that have been provided will, in fact, be a medical expert. Moreover, it almost invariably will be the case that expert opinion testimony, not just the “facts” of raw clinical data or observations, is necessary to assist a court in making the necessary judgments as to these matters. Accordingly, I question whether this extra step taken by the main opinion of implicitly sanctioning the calling of such experts as “fact -witnesses” to share the “facts” pertaining to their clinical assessments and conclusions (conclusions that would never have been formed had the patient not been sent by the probate court to the witness or his or her employer for assessment in the first place) in effect just undermines the general rule requiring the compensation of such witnesses that we otherwise uphold today.
Furthermore, and independent of the foregoing concerns, I am concerned by footnote 5 in its own right. I fail to see how the encouraged “separation of the treatment and testimony functions” addresses the stated concern for the impairment of the doctor-patient relationship when the “separate” witness’s testimony simply relays information the witness has received from the doctor.
Secondly, in terms of the main opinion, I decline to join footnote 4. The first sentence of this footnote states, in part, that “we do not wish to imply that the probate court must in all instances pay the fee of any expert ... who testifies in a civil-commitment hearing.” 141 So.3d at 1003. Again, subject to the reasonableness restriction, that is exactly what I read the main opinion as not only implying, but expressly holding. If an expert has in fact testified as an expert, it will be because the “preliminary questions” regarding his or her qualifications to do so have already been resolved by the court in the witness’s favor.
Because of these concerns and because I believe the preceding aspects of the main opinion go beyond the question before us today, I respectfully decline to join them.

. I also agree with the views expressed by Justice Parker in his special concurrence and would join that concurrence if not for the two concerns regarding the main opinion expressed herein.

. The footnote that accompanies this sentence and appears to provide context for it reads as follows: "When the treating therapist also functions as a forensic witness, the doctor-patient relationship may be impaired.... *1007 AHS’s separation of the treatment and testimony functions may thus be beneficial to the consumer.” 141 So.3d at 1004 n. 5.